IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| John Wilson, #66874, ) | |
| ) | Civil Action No. 6:06-1633-GRA-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Director McKellar, Director Ozmint, ) | |
| Officer Manigault and his unnamed ) | |
| partner, ) | |
| ) | |
| Defendants ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., all pretrial matters in cases filed under Title 42, United States Code, Section 1983, are referred to a United States Magistrate Judge for consideration.

The defendants filed a motion for summary judgment on October 16, 2006. By order filed October 19, 2006, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On November 20, 2006, the plaintiff filed a response to the motion. On December 1, 2006, the defendants filed a reply brief.

**FACTS PRESENTED**

In his complaint, the plaintiff, an inmate at Evans Correctional Institution, alleges that on November 5, 2004, defendant Manigault, a Rapid Response Team (also known as the "Red Team") First Sergeant, and his unnamed partner used excessive force when they forcefully handcuffed him, jumped on his back to secure the handcuffs, pulled him to his feet, and dropped him on the ground in a holding cell (comp. 1-2). He further complains that when defendant Manigault and his unnamed partner walked him about 50 feet to the holding cell they "tortured [him] the whole time" and used a racial slur (comp. 2). He does not specify how he was tortured by the defendants. He also named Kenneth McKellar, who in November 2004 was employed as Operations Coordinator, and Director Ozmint as defendants. He claims he was subjected to cruel and unusual punishment in violation of his Eighth Amendment rights.

Defendant Manigault submitted an affidavit in which he testified that he has no recollection of such an incident occurring during the Rapid Response Team's deployment at Evans between October and December 2004. He further testified that if such an incident had happened, he would have documented it in an Incident Report and Use of Force Report, neither of which exist to his knowledge (Manigault aff. ¶ 2). Terry Bracey, the Major of the Rapid Response Team, also submitted an affidavit testifying that he has no recollection of the incident described by the plaintiff and that if such an incident had taken place it would have been reported to him and a report would have been completed (Bracey aff. ¶ 2).

The plaintiff's medical records indicate that he never sought medical treatment immediately following this alleged incident and that his first visit to medical following this alleged event occurred over one month later on December 15, 2004 (def. m.s.j., ex. G, SCDC Health Services Medical Summary, pp. 10-11). ore importantly, the medical records

entry for that date indicates only that he accepted a flu vaccine and a pneumonia vaccine. *Id*. There is no entry on that date indicating any pain resulting from any injury. *Id.*

The plaintiff was transferred from Evans to Lee Correctional Institution on February 2, 2005, at which time he was medically examined for transfer clearance. The plaintiff's Medical Clearance for Transfer report reveals no health problems, injuries, or otherwise (def. m.s.j., ex. F, Medical Clearance for Transfer, p. 1).

## **APPLICABLE LAW**

Federal Rule of Civil Procedure 56(c) states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not

3

rest on the allegations averred in his pleadings. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Furthermore, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

### **ANALYSIS**

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "'[I]t is obduracy and wantonness,

4

not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)).

In *Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc), the court held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*." Further, "extraordinary circumstances are present when 'the force used [is] of a sort repugnant to the conscience of mankind … or the pain itself [is] such that it can properly be said to constitute more than *de minimis* injury.'" *Taylor v. McDuffie*, 155 F.3d 479, 483-84 (1998) (quoting *Norman*, 25 F.3d at 1263 n. 4).

The plaintiff cites three entries in his prison medical record that he claims indicate some injury resulting from the alleged assault on him. The first entry cited is dated March 29, 2005, and is organized in order of (1) inmate's complaint ("My whole back is hurting me. It has been hurting for a few months now"), and (2) nurse's observation/ diagnosis ("Able to walk heel-to-toe without difficulty. Able to bend forward, backward and side-to-side without difficulty. Steady gait. Muscle spasms palpated at mid back. Denies injury**.** Musculoskeletal discomfort") (def. m.s.j., ex. G, p. 10). This medical visit occurred approximately five months after the date of the alleged assault on November 4, 2004. More significantly, the entry indicates that the plaintiff denies injury, which is consistent with the fact that the plaintiff appears to have had a pre-existing back condition prior to November 4, 2004. The plaintiff visited medical only one other time between November 4, 2004, and March 29, 2005. As noted above, on December 15, 2004, the plaintiff received a flu vaccine, but no other complaints or diagnoses were noted. Additionally, it is important to note that the plaintiff's prison medical record for previous years indicates a pre-existing back

condition with identical symptoms to those complained of in the March 29, 2005, visit. Most notably, on March 11, 2003, the plaintiff complained, "I have this bad cold and my back is killing me. I have back pain any way and this coughing is aggravating it" (def. m.s.j., ex. G, p.11). The plaintiff also cites a January 6, 2006, entry in his medical record wherein the nurse notes the presence of varicose veins in both of the plaintiff's lower legs (def. m.s.j., ex. G, p. 8). This entry occurs over 13 months after the date of the alleged assault and offers no evidence that the presence of varicose veins is in any way related to an assault. The plaintiff also cites a July 10, 2006, entry in his medical record wherein he reports that, "he believes something bit his right lower leg while he was on the rec. field" (def. m.s.j., ex. G, p. 3). Again, there is nothing in this entry suggesting that the plaintiff has suffered an injury as the result of an assault.

In the present case, the lack of any serious injury compels the conclusion as a matter of law that the plaintiff suffered no constitutional deprivation. *See Taylor*, 155 F.3d at 484 ("temporary swelling and irritation is precisely the type of injury this Court considers *de minimis*."); *Stanley v. Hejirika*, 134 F.3d 629, 637-38 (4th Cir. 1998) ("bruising of his right arm, left jaw, left and right wrists and back, and a tooth which was loosened" constituted *de minimis* injury). Moreover, the United States Supreme Court has noted that "not ... every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (internal citation omitted). The Court further stated, "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* use of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id.* at 9-10. The "core judicial inquiry" in evaluating an excessive force claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 7. The plaintiff has failed to prove either of the elements of an Eighth Amendment claim.

6

The plaintiff's only mention of defendant McKellar in the complaint is that he "promot[ed] anarchy." The only mention of defendant Ozmint in the complaint is that the plaintiff is seeking one million dollars from him (comp. at 8). The plaintiff has come forward with no evidence of individual actions by these defendants taken in violation of his constitutional rights. Further, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.), *cert. denied*, 513 U.S. 813 (1994). The plaintiff has failed to show a constitutional injury inflicted by the subordinates of either of these two defendants, and he has failed to establish issues of material fact with regard to the three elements necessary for supervisory liability.

Based upon the foregoing, this court finds that the plaintiff has failed to show an issue of material fact on the Eighth Amendment claim. Accordingly, summary judgment should be granted on the plaintiff's constitutional claims.

The defendants also contend that they are entitled to qualified immunity for the claims brought against them in their individual capacities. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This qualified immunity is lost if an official violates a constitutional or

7

statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.* Thus, in ruling on a defense of qualified immunity, a court must (1) identify the specific right allegedly violated; (2) determine whether at the time of the alleged violation the right was clearly established; and (3) if so, determine whether a reasonable person in the official's position would have know that his action would violate the right. *Pritchett v. Alford,* 973 F.2d 307, 312 (4th Cir. 1992).

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne,* 526 U.S. 286, 290 (1999); *see also Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson,* 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott,* 156 F.3d 563, 567 (4th Cir. 1998).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. Therefore, the defendants are entitled to qualified immunity.

To the extent the plaintiff has alleged any state law claims against the defendants, the court should decline to exercise supplemental jurisdiction over any such claims as it is recommended that summary judgment be granted on the federal claims. *See* 28 U.S.C. §1367(c).

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, this court recommends that the defendants' motion for summary judgment be granted.

IT IS SO ORDERED.

WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

March 12, 2007

Greenville, South Carolina